JOHN B. BULGOZDY, Cal Bar No. 219897
Email: bulgozdyj@sec.gov
NICHOLAS S. CHUNG, Cal Bar No. 192784
Email: chungni@sec.gov
MORGAN B. WARD DORAN, Cal. Bar No. 246107
Email: warddoranm@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Andrew G. Petillon, Associate Regional Director
John M. McCoy III, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036-3648
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

FILED

AUG -5 2009

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO,<br><br>Defendants. | Case No. SACV09-818 DOC(RNBX)<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>'09 MC 0626 |

Plaintiff Securities and Exchange Commission ("Commission") alleges as follows:

## SUMMARY

1. This matter concerns fraud in the offer and sale of a $76.9 million in. securities in the form of notes by the Defendants: Medical Capital Holdings, Inc. ("MCHI"); Medical Capital Corporation ("MCC"); Medical Provider Funding

Corporation VI ("MP VI"); Sidney M. Field; and Joseph J. Lampariello. MCHI is a medical receivables financing company that operates through MCC, its wholly-owned subsidiary, to administer several Special Purpose Corporations ("SPCs"), including MP VI. Defendants Field and Lampariello are directors of MCHI, MCC, and MP VI, with Field also serving as the Defendant entities' Chief Executive Officer ("CEO") and Lampariello serving as their president and Chief Operating Officer ("COO"). Since 2003, MCHI, MCC, Fields, and Lampariello have raised over $2.2 billion through offerings of notes in MP VI and five other similarly structured SPCs. As of March 31, 2009, MP VI and its affiliated SPCs have over $1 billion in notes outstanding and, since August 2008, five of the SPCs have been in default or late in paying principal and/or interest on $992.5 million in notes.

2. The Defendants are committing fraud in the offer and sale of MP VI notes. As of June 19, 2009, the Defendants misappropriated approximately $18.5 million of the $76.9 million raised through the sale of MP VI notes to pay administrative fees to MCC. These fee payments were contrary to representations in MP VI's original private placement memorandum ("PPM"), which stated that administrative fees would not be paid out of the offering proceeds, as well as representations in MP VI's May 27, 2009 supplemental PPM ("Supplemental PPM") that less than $4 million of offering proceeds had been used for purposes other than purchasing accounts receivables. The Defendants also misrepresented that none of the SPCs affiliated with MP VI had defaulted on, or been late in making payments of, principal and/or interest to their respective investors. In fact, two MP VI-affiliated SPCs began defaulting on interest and/or principal payments in the same month that MP VI began its offering, and recently two other MP VI-affiliated SPCs have defaulted or been late in making interest payments.

3. The Defendants, by engaging in the conduct described in this Complaint, have violated, or aided and abetted, and unless enjoined will continue to violate, or aid and abet, the antifraud provisions of the federal securities laws.

2

1  By this Complaint, the Commission seeks emergency relief against the Defendants,
2  including a temporary restraining order, an asset freeze against MCHI, MCC, and
3  MP VI, the appointment of a receiver, an order prohibiting the destruction of
4  documents, an order expediting discovery, and accountings, as well as preliminary
5  and permanent injunctions, disgorgement with prejudgment interest, and civil
6  penalties.

## JURISDICTION AND VENUE

7
8  4. This Court has jurisdiction over this action pursuant to Sections 20(b),
9  20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C.
10  §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27
11  of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1),
12  78u(d)(3)(A), 78u(e), and 78aa. The Defendants have, directly or indirectly, made
13  use of the means or instrumentalities of interstate commerce, of the mails, or of the
14  facilities of a national securities exchange in connection with the transactions, acts,
15  practices and courses of business alleged in this Complaint.
16  5. Venue is proper in this district pursuant to Section 22(a) of the
17  Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C.
18  § 78aa, because certain of the transactions, acts, practices and courses of conduct
19  constituting violations of the federal securities laws occurred within this district,
20  and all of the defendants reside and/or are located in this district.

## DEFENDANTS

21
22  6. **Medical Capital Holdings, Inc.** is a Nevada corporation with its
23  principal place of business in Tustin, California. Through various wholly-owned
24  operating subsidiaries and SPCs, MCHI provides financing to healthcare providers
25  by purchasing their accounts receivables and making secured loans to them.
26  MCHI uses the special purpose corporations to raise money from investors to fund
27  the financings. MCHI uses the operating subsidiaries to underwrite, monitor,
28  administer, and service these financings. MCHI is not registered with the

1  Commission in any capacity. In February 2001, the California Department of
2  Corporations issued a Desist and Refrain Order against MCHI from the further
3  offer or sale of securities in the State of California.

    7.  **Medical Capital Corporation** is a Nevada corporation and wholly-owned subsidiary of MCHI, with its principal place of business in Tustin, California. MCC is the administrator for each of MCHI's SPCs, including MP VI, and provides management, underwriting, and administrative services, such as bookkeeping, payroll, and accounting services, including administration of all investor promissory notes and interest payments. MCC is not registered with the Commission in any capacity.

    8.  **Medical Provider Funding Corporation VI** is a Nevada corporation and wholly-owned SPC of MCHI that was formed in April 2008. From August 2008 to the present, MP VI has conducted a note offering and, as of June 19, 2009, it had raised $76.9 million through the issuance of notes to about 700 investors. MP VI has never been registered with the Commission in any capacity, nor has it registered an offering of securities under the Securities Act or a class of securities under the Exchange Act. Since May 2009, MP VI has been late on interest payments to investors by several days.

    9.  **Sidney M. Field**, age 63, resides in Villa Park, California. Field has been the CEO and a director of MCHI and its subsidiaries during the relevant period.

    10. **Joseph J. Lampariello**, age 55, resides in Huntington Station, New York, and Newport Beach, California. Lampariello has been the president, COO, and a director of MCHI and its subsidiaries during the relevant period.

### RELATED ENTITIES

    11. **Medical Provider Financial Corporation I** ("MP I") is a Nevada corporation and wholly-owned special purpose subsidiary of MCHI that was formed in September 2003. From December 2003 to August 2007, MP I

4

conducted a note offering, raising approximately $554.9 million through the issuance of about 3,821 notes to investors. As of May 31, 2009, MP I had repaid all but $375,000 of its investors' principal.

12. **Medical Provider Financial Corporation II** ("MP II") is a Nevada corporation and wholly-owned SPC of MCHI that was formed in October 2003. From January 2004 to December 2005, MP II conducted two series of note offerings, raising approximately $251.7 million through the issuance of about 3,458 notes to investors. As of May 27, 2009, MP II had $88 million in outstanding notes and had defaulted in paying $43 million in principal and $1.3 million in interest to its investors.

13. **Medical Provider Financial Corporation III** ("MP III") is a Nevada corporation and wholly-owned SPC of MCHI that was formed in February 2005. From July 2005 to January 2008, MP III conducted two series of note offerings, raising a total of about $522.7 million by issuing 5,318 notes to investors. As of March 31, 2009, MP III had $109.4 million in outstanding notes, and as May 27, 2009, MP III had defaulted in paying principal on $26.5 million in outstanding notes.

14. **Medical Provider Financial Corporation IV** ("MP IV") is a Nevada corporation and wholly-owned SPC of MCHI that was formed in July 2005 and commenced operations in October 2006. From November 2006 through February 2008, MP IV conducted two series of note offerings, raising a total of $401.3 million by issuing 4,222 notes to investors. As of May 27, 2009, MP IV had $400 million in outstanding notes and defaulted in interest payments in January 2009 and since March 2009.

15. **Medical Provider Funding Corporation V** ("MP V") is a Nevada corporation and wholly-owned SPC of MCHI that was formed in September 2007. From November 2007 to about July 2008, MP V conducted a note offering, raising $401.8 million by issuing 4,323 notes that begin to mature in November 2009. As of March 31, 2009, MP V had $401.1 million in outstanding notes issued to 4,270

1  investors. In May 2009, interest payments to investors were delayed by several days.

## THE FRAUDULENT SCHEME

### A. MCHI's Business and SPC Note Offerings

16. MCHI provides financing to healthcare providers by purchasing their accounts receivables and making secured loans to them. MCHI funds its healthcare financing by offering notes issued by its SPCs. Since December 2003, MCHI has raised approximately $2.2 billion from over 20,000 investors. MCHI uses its operating subsidiary MCC to administer each of the SPCs, providing management, underwriting, and administrative services, such as bookkeeping, payroll, and accounting services – including administration of all investor promissory notes and interest payments.

17. The SPCs sold the notes through registered broker-dealers to only accredited investors under Rule 506 of Regulation D. 17 C.F.R. §§ 230.501–230.508. In the offerings, the SPCs sold notes with various maturities (one to seven years) and interest rates (8.5% to 10.5%). In the PPMs, the SPCs represented that after paying offering expenses of 4% to 8%, they would use the net offering proceeds to purchase healthcare receivables and make investments in other businesses. The notes are securities in the form of notes as investment contracts.

18. The Defendants used substantial amounts of the SPCs' offering proceeds to purchase healthcare receivables and make loans to or investments in healthcare-related businesses. As of March 31, 2009, MCC, as administrator of the SPCs, controlled receivables, loans, or investments owned by the SPCs with a purported total value of over $1.2 billion.

19. Despite raising about $2.2 billion from investors and controlling over $1 billion in purported assets, the proposed defendants do not keep the SPCs' financial statements in accordance with GAAP or even keep their accounting records in a manner that would allow GAAP financial statements to be generated.

For example, at the time they purchase a batch of receivables, the SPCs record as revenue the amount that expected collections exceed the purchase price and never reconcile actual collections with expected collections.

**B.    Misrepresentations in the Offer and Sale of MP VI**

    **1.    Misappropriation of Offering Proceeds to Pay Fees to MCC**

20.    In MP VI's original August 5, 2008 PPM and supplemental May 27, 2009 PPM, the Defendants disclosed that MCC would be MP VI's administrator, providing management, underwriting of receivables, and administrative services, such as bookkeeping, payroll, and accounting services. The Defendants also disclosed in the PPMs that MCC received a fee for such services, which was equal to the difference between what MP VI expected to receive from its receivables and loans less operating costs and the notes' aggregate outstanding principal balance. They further disclosed in the PPMs that MCC was an affiliate and that the administrative agreement was not made through independent arm's length negotiations.

21.    The Defendants, however, represented in the MP VI PPMs, under the heading "Restrictions on Use of Proceeds," that MP VI would not use "any proceeds from the sales of notes to pay administrative fees to [MCC] for the services it provides as administrator" and that that such fees would rather be "paid out of amounts collected from the accounts receivable and proceeds from other investments." They further represented in the PPMs that MP VI believed that the administrative fees paid to MCC would be "no greater than those an independent third-party would charge for providing similar services."

22.    The Defendants also represented in MP VI's PPMs that the note offering's proceeds would be used to: purchase account receivables; make secured loans; pay sales commissions and other operating costs; provide funds for general operating purposes; and pay principal and interest on the notes.

23. The Defendants have not used MP VI's offering proceeds as represented in the PPMs and instead have misappropriated a substantial amount of the investors' funds to pay administrative fees to MCC. In fact, as shown on Table 1 below, as of June 19, 2009, MP VI's administrative fees exceeded its collections by approximately $18.5 million in direct contravention to its PPMs' representations that administrative fees would solely be "paid out of amounts collected from the accounts receivable and proceeds from other investments."

24. In the May 27, 2009 Supplemental PPM, the Defendants further misrepresented how the note offering's proceeds had been used. Specifically, Defendants represented:

> As of February 28, 2009, we have issued notes in the face amount of $69,331,558.90. We have used $65,558,703.02 of the proceeds to finance accounts receivable. We have applied $3,264,410.12 to commissions and other expenses. The balance is on deposit in our trust account awaiting additional accounts receivable financing.

In fact, as shown on Table 1 below, as of February 28, 2009, Defendants had paid $21.7 million in administrative fees, which exceeded MP VI's collections by $16.9 million. In addition, Defendants had actually spent approximately $48.8 million on receivables, rather than the $65.5 million represented in the Supplemental PPM.

25. The Defendants misappropriation of investors' funds to pay fees is shown on the table below. Defendants took approximately 24% of the amount raised as administrative fees, far in excess of the collections on receivables.

///
///
///
///
///

*Table 1: MP VI Actual Administrative Fees Paid*

| Date | Collections on Receivables | Administrative Fees Paid to MCC | Excess Administrative Fees[1] |
|---|---|---|---|
| Actual as of 2/28/09 | $4.8 million | $21.7 million | $16.9 million |
| Actual as of 6/19/2009 | $6.5 million | $25 million | $18.5 million |

### 2. Misrepresentation Regarding Defaults of Other SPCs

26. In MP VI's original PPM, the Defendants disclosed that MP VI had no operating history but represented that MP VI had "several experienced affiliates that ha[d] completed offerings of debt securities backed by accounts receivable," and that the "affiliates ha[d], since 1994, financed accounts receivable having an aggregate face amount of over $5 billion." The PPM further stated that "[MP VI's] affiliates have never defaulted in the payment of their obligations on those debt securities, and all interest payments on those securities were made when due."

27. In fact, the Defendants knew, or were reckless in not knowing, that during the MP VI offering several of the affiliated SPCs had defaulted on their obligations. The May 27, 2009 Supplemental PPM represents that MP II, MP III, and MP IV are each in default. Indeed, since August 2008 (the same month that the MP VI offering began), MP II defaulted on $43 million in principal payments and $1.3 million in interest payments, and MP III defaulted on $26.5 million in principal payments. MP IV missed interest payments in January 2009 and from March 2009 through the present. MP V has also recently made interest payments late.

---

[1] "Excess administrative fees" are those fees that exceed the amount MP VI collected on receivables and, therefore, were paid with offering proceeds.

28. Although the Defendants notified MP II and MP III investors about the defaults beginning in August 2008, the Defendants did not notify purchasers of MP VI notes about MP VI's affiliates' defaults until about June 2009. On or about June 8, 2009, the Defendants sent broker-dealers who had previously sold MP VI notes the Supplemental PPM, which disclosed the principal and interest payment defaults by MP II, MP III, and MP IV.

29. At all times, Defendants acted with scienter.

## FIRST CLAIM FOR RELIEF

### Fraud In The Offer Or Sale Of Securities

### Violations of Section 17(a) of the Securities Act

### (Against All Defendants)

30. The Commission realleges and incorporates by reference paragraphs 1 through 29 above.

31. The Defendants, and each of them, by engaging in the conduct described above, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by use of the mails directly or indirectly:

    a. with scienter, employed devices, schemes, or artifices to defraud;

    b. obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    c. engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

32. By engaging in the conduct described above, the Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the

1  Securities Act, 15 U.S.C. § 77q(a).

## SECOND CLAIM FOR RELIEF

### Fraud In Connection With The Purchase Or Sale Of Securities

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against All Defendants)

33. The Commission realleges and incorporates by reference paragraphs 1 through 29 above.

34. The Defendants, and each of them, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, with scienter:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

35. By engaging in the conduct described above, the Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

///
///
///
///
///

## THIRD CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

### (Against Defendant MCC)

36. The Commission realleges and incorporates by reference paragraphs 1 through 29 above.

37. In the alternative, by engaging in the conduct described above, MCC, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or the mails, with scienter:

    a. employed devices, schemes, or artifices to defraud;

    b. made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and

    c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

38. By engaging in the conduct described above, MCC knowingly provided substantial assistance to violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and therefore is liable as an aider and abettor pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e).

39. Unless restrained and enjoined, MCC will continue to violate and aid and abet violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

///

///

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the Defendants committed the alleged violations.

### II.

Issue judgments, in forms consistent with Fed. R. Civ. P. 65(d), temporarily, preliminarily, and permanently enjoining the Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the judgment by personal service or otherwise, and each of them, from violating Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, and with regard to MCC, in the alternative, from aiding and abetting violations of Section 10(b) and Rule 10b-5.

### III.

Issue, in a form consistent with Fed. R. Civ. P. 65, a temporary restraining order and a preliminary injunction freezing the assets of MCHI, MCC, and MP VI and any entity affiliated with any of them, appointing a receiver over MCHI, MCC, and MP VI, prohibiting each of the Defendants from destroying documents, granting expedited discovery, and requiring accountings from each of the Defendants.

### IV.

Order each of the Defendants to disgorge all ill-gotten gains from their illegal conduct, together with prejudgment interest thereon.

### V.

Order each of the Defendants to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act,

1  15 U.S.C. § 78u(d)(3).

## VI.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VII.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: July 16, 2009

Respectfully submitted,

John B. Bulgozdy
Nicholas S. Chung
Morgan B. Ward Doran
Attorneys for Plaintiff
Securities and Exchange Commission

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| SECURITIES AND EXCHANGE COMMISSION<br><br>PLAINTIFF(S)<br>v.<br>MEDICAL CAPITAL HOLDINGS, INC.; MEDICAL CAPITAL CORPORATION; MEDICAL PROVIDER FUNDING CORPORATION VI; SIDNEY M. FIELD; and JOSEPH J. LAMPARIELLO<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV09-818 DOC(RNBX)<br><br>SUMMONS |
|---|---|

TO: DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, __John B. Bulgozdy/Nicholas S. Chung__, whose address is __SEC/LARO, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, California 90036__. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __JUL 16 2009__       By: __Nancy Castro__
                                      Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                     SUMMONS

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

SECURITIES AND EXCHANGE COMMISSION

**DEFENDANTS**
Medical Capital Holdings, Inc., Medical Capital Corporation, Medical Provider Funding Corporation VI, Sidney M. Field, Joseph J. Lampariello

Orange County

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

John Bulgozdy and/or Nicholas S. Chung     (323) 965-3998
Securities and Exchange Commission
5670 Wilshire Boulevard, 11th Floor, Los Angeles California 90036

Attorneys (If Known)

John F. Libby     (310) 312-4000
Manatt, Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No     ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
The Complaint alleges violations of the federal securities laws. 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5 thereunder.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations |  | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service |  | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations |  | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability |  | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 210 Land Condemnation |  | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | IMMIGRATION | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions |  | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: **SACV09-818 DOC(RNBX)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)     CIVIL COVER SHEET     Page 1 of 2

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☒ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Medical Capital Holdings, Inc. - Orange County; Medical Capital Corporation - Orange County; Sidney M. Field - Orange County; and Joseph J. Lampariello - Orange County | Medical Provider Funding Corporation VI - Nevada; Joseph J. Lampariello - New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date July 16, 2009

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge David O. Carter and the assigned discovery Magistrate Judge is Robert N. Block.

The case number on all documents filed with the Court should read as follows:

**SACV09- 818 DOC (RNBx)**

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division | [X] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY